## MIDDLE DISTRICT, HARRISBURG, 1854.

2g 273<br>198  177

# Glenn *versus* Cuttle.

1. An attorney in fact, who collects money for his principal, is bound to pay it over at once; and his neglect to do so, is a breach of the implied contract, for which an action of *assumpsit* will lie.

2. When an attorney in fact, collects money for his principal, and neglects to pay it over, the Statute of Limitations commences to run as soon as the right of action accrues.

3. If a client applies to his attorney, and receives a false or evasive answer as to moneys collected, it will arrest the running of the Statute of Limitations.

4. Where an attorney collects money for his client, and uses no fraud or falsehood to him in relation to it, the statute commences to run from the time of the collection.

5. Where the professional relation of attorney and client, involves a series of acts and duties, an attorney is not sueable, until the relation is dissolved.

6. Where the relation of attorney and client involves only a single transaction, as the collection of a debt, he is not to be instantly annoyed with an action, nor suit brought until demand made.

7. If an attorney does not pay over, or give notice of money collected in a reasonable time, it is culpable negligence, for which an action may be brought without demand.

ERROR to the Court of Common Pleas.

The facts sufficiently appear in the opinion of the court delivered December 11, 1854, by

WOODWARD, J.—Moses Boggs was constituted the attorney in fact of Rebecca Campbell, on the 18th day of August, 1835, to receive for her a sum of money due from the estate of her aunt, and the money came into his hands on the 23d day of February, 1837.   More than ten years thereafter, this action of *assumpsit* was instituted against his personal representative, to

[Glenn *v.* Cuttle.]

recover the money so received, and the defence rests on the Statute of Limitations.

An attorney in fact, who collects money for his principal, is bound to pay it over at once, and his neglect to do so is a breach of the implied contract, for which an action of *assumpsit* will lie. And as the Statute of Limitations operates on the remedy, it begins to run as soon as the right of action accrues. When the action has been delayed for more than six years, and the statute is pleaded, the burden of proving facts to resist its operation, or, in the usual phrase, to take the case out of the statute, is upon the plaintiff.

What does this plaintiff rely on for this purpose? He first alleges a trust; that Moses Boggs stood in a relation of such confidence to Mrs. Campbell, as to deprive him of the protection of the statute. A trust, without doubt, there was; but it has been repeatedly said, that it is only these technical continuing trusts, exclusively cognizable in equity, which are exempt from the statute. *Finney* v. *Cochran,* 1 W. & S. 118; *Agnew* v. *Fetterman,* 4 Barr, 56. Had counsel gone into equity to enforce this trust, principles of decision in analogy to the Statute of Limitations would have been fatal to a claim delayed so long. Much rather, then, is the remedy barred, when a common law action is employed, which is expressly within the statute. A trust that is not subject to the statute, cannot be so sued. The plaintiff's answer to the plea of the statute must be given up, or his action must. They cannot consist.

The next ground assumed by the plaintiff is, that the statute does not commence to run in favor of an attorney in fact, who has collected money for his principal, until he has given notice to the principal, of the receipt of the money. It is likened to the case of an attorney at law, and this rule is said to have been established in respect to this class of agents, in *Potter* v. *McDowell,* 8 Barr, 189. I confess, I see no adequate ground for a distinction between attorneys in fact and attorneys at law. Diligence and skill in the collection, and promptness and fidelity in the paying over moneys, are required of both. It is reasonable, therefore, that they should have the same measure of protection from the Statute of Limitations. What, then, is the settled rule as to the time when the statute begins to run in favor of an attorney at law? This question was very carefully considered in *Wilcox* v. *The Executors of Plummer,* 4 Peters, R. 172. The action was *assumpsit,* and it was held, that when the attorney was chargeable with negligence or unskilfulness, his contract was violated, and the action might have been sustained immediately, and as a consequence, that the statute run from the time the action accrued, and not from the time that the damage was developed, or became definite.

[Glenn *v*. Cuttle.]

The same principle will be found very fully vindicated in *Sheet* v. *McCarthy*, 3 Barn. & Ald. 626; *Battle* v. *Faulkner*, 3 Eng. Com. Law, 289; and *Howell* v. *Young*, 11 Id. 219. In the latter case, the negligence for which the action was brought was not discovered for some years, but the court held that the right of action accrued from the breach of duty. "There is no new misconduct or negligence of the attorney," said Holroyd, J., " and consequently, there is no new cause of action." In the very recent case of the *East India Company* v. *Paul*, 1 Eng. Law & Eq. R. 49, Lord Campbell stated the result of the English authorities in these words : " The rule is firmly established, that in *assumpsit*, the breach of contract is the cause of action, and that the Statute of Limitations runs from the time of the breach, even where there is fraud on the part of the defendant." This rule of decision has been applied to notaries, (*Bank of Utica* v. *Childs*, 6 Cowen, 245,) and to sheriffs, (9 Barr, 120; *Miller* v. *Adams*, 16 Mass. R. 456; *Rice* v. *Hosmer*, 12 Id. 127; *Mather* v. *Greene*, 17 Id. 60,) and to various agencies. 1 Gill, 234; 2 Richardson, 133; 1 Sandford, S. C. R. 98; 2 Strobh. 344. See also 4 Ala. R. 493; 2 McMullan, 171; 4 Ham. 331; 1 Sumner, 478. In New York and Pennsylvania, it has been applied to actions against attorneys for moneys collected. *Stafford* v. *Richardson*, 15 Wendell, 306; *Agnew* v. *Fetterman*, 4 Barr, 58. But fraudulent concealment has been held to modify the rule in Pennsylvania. *Jones* v. *Conoway*, 4 Yeates, 111; *Harrisburg Bank* v. *Foster*, 8 Har. 16; and *McDowell* v. *Potter*, 8 Barr, 190. It is on this ground alone the ruling in *McDowell* v. *Potter* can be sustained. The pleadings are not given in the report of the case, but the opinion rests on the plaintiff's replication to the defendant's plea of the statute, that he had neglected to advise them of the receipt of the money, " and altogether concealed the same from their knowledge." If the evidence tended to support that replication, it ought to have gone to the jury; and if the fraud was found, then I agree that, according to the Pennsylvania mode of holding the above rule, the statute would begin to run only from the discovery of the fraudulent concealment; but if the court meant to say, that without proof of fraudulent concealment, the statute would not begin to run in favor of the attorney till he had given notice that the money was in his hands, and that by replying fraud to a plea of the statute, the *onus* was thrown on the defendant, that case is not to be followed. Understood in this manner, it is in conflict with the authorities, to only a few of which I have adverted, and irreconcilable with the nature of the action of *assumpsit*, and of the plea of the Statute of Limitations; for on what is the action founded, but the breach of the implied contract? And when is the contract broken? Manifestly when the money is not paid

over within a reasonable time after it is received. Then at that point, the cause of action accrues, not years afterwards, when the client, with a lack of diligence for which he alone is responsible, discovers that it is in the hands of his counsel. Actions on the case for consequential damages are not to be brought till the damages are developed; but actions for breach of contract do not wait on consequences, but attach to the breach. The *measure of damages* in these actions may be affected by acute consequences, resulting from the breach, but they do not give the right of action; that arises the instant the contract is broken. Say that it is part of the attorney's duty to give prompt notice of the collection of the money; it is neglect of that duty which renders him liable to the action on the contract, and there the principle is too well grounded to be shaken, that when the action accrues, the statute begins to run. Equally well settled is the rule, that where the statute is pleaded to a stale claim, over due for more than six years, the burden of proof is on the plaintiff, to take his case out of the statute. If he *prove* fraudulent concealment; he may shift the burden on to the defendant, but he does not do this simply by pleading fraudulent concealment in reply to the statute. Clients and principals, who employ attorneys, whether at law or in fact, like all other men, are bound to exercise reasonable diligence about their own affairs. The creditor, who allows his simple contract debts to run on, overdue, for more than six years, must charge their loss to his own negligence; so with the land-owner, who delays his action against an intruder for twenty-one years; so with the constituent who neglects to call his agent or attorney to account. Statutes of Limitation are intended to promote promptness and punctuality in business; the settlement of claims while parties are alive; before papers are lost and witnesses die; and he who will not take the hint, must take the consequences. If a client applies to his attorney, and receives a false or evasive answer as to moneys collected, let him prove that, and it will arrest the running of the statute; but if he can prove nothing to excuse his delay in suing, the statute must have its course—for it is founded in wisdom. In *Krause* v. *Dorrance*, 10 Barr, 462, it was decided that an attorney was not liable to an action by his client for money collected, until after demand made, unless there be special circumstances dispensing with the necessity of demand, one of which, as specified, is "culpable negligence in not giving notice of the receipt of the money in a reasonable time." The same thing was held in *Taylor* v. *Bates*, 5 Cowen, 376, in speaking of which case in *Stafford* v. *Richardson*, Chief Justice Savage remarked, "If an attorney may shield himself from responsibility, upon the ground that no demand has been made, it does not follow that

[Glenn v. Cuttle.]

the client can excuse his *laches* by a principle which is intended to protect from costs, an agent who has acted honestly and diligently in the business of his principal. Although an attorney may protect himself from a suit by want of a demand, he is not for that reason to be subject all his life-time to demands, however stale. If a demand was necessary in this case, the plaintiff should have made it in season to have brought his suit within six years after the defendant had converted his property. It was his own fault that he had not put himself in a condition to sue, and he can never take advantage of his own *laches*." These views show that the point ruled in *Krause* v. *Dorrance*, does not embarrass the question under consideration, and the exception to the rule in that case shows the same thing; for if the failure to pay over money in a reasonable time is culpable negligence in the attorney, such as relieves the client from the necessity of demand, then he has a right of action presently; and because his right of action is complete, the Statute of Limitations begins to run against him from the time of the "culpable negligence." Thus we are brought back to the primary ground, that the breach of the contract is the date of the right of action, and of the commencement of the statute.

Where the professional relation involves a series of acts and duties, an attorney is not sueable until the relation is dissolved. Where it involves a single transaction, as the collection of a particular debt, he is not to be annoyed with an action the instant the money is in hand, and before demand made. He is to have a reasonable time to remit or give notice of the collection; but if he do not remit or give notice within a reasonable time, it is culpable negligence—a breach of the contract with his client—for which an action may be brought without demand. No where, either in the principles of the law or in the adjudged cases, do we find any countenance for the doctrine, that the right of action must wait on the act of the attorney in giving notice to the client, for then, possibly, he might never give notice, and thus escape being sued altogether; and if the right of action be not suspended on such a contingency, neither is the running of the statute.

For these reasons we are of opinion that the answer made to the plea of the statute in this case, is entirely insufficient, and that the judgment should be affirmed.

Judgment affirmed.